UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

TYRELL MALOID

CRIMINAL ACTION

NO. 15-108-JJB-RLB

**RULING**

This matter is before the Court on a Motion to Suppress (Doc. 20) brought by the defendant, Tyrell Maloid. The United States ("the Government"), filed an opposition (Doc. 23-1). The Court conducted a suppression hearing on October 29, 2015. The defendant filed a post-hearing memorandum in support for his motion to suppress (Doc. 29). The Government filed a post-hearing opposition (Doc. 34), and the defendant filed a reply brief (Doc. 35). For the reasons stated herein, the defendant's Motion to Suppress (Doc. 20) is **GRANTED in part and DENIED in part**.

**I.    BACKGROUND**

During the hearing on the instant motion, this Court heard testimony from several officers who took part in executing the search warrant on the defendant's residence: Detective Jeffery Pittman, Baton Rouge Police Department ("BRPD") Narcotics Division; Detective Chris McClure, BRPD Narcotics Division; Corporal Shannon Helaire, Baton Rouge City Police; and Detective Tommy Banks, BRPD Narcotics Division. The Court also admitted into evidence the affidavit for search warrant (Gov. Ex. 1A), the search warrant (Gov. Ex. 1B), and the return of search warrant (Gov. Ex. 1C). Based on the evidence presented at the suppression hearing, the Court finds the following facts.

On August 27, 2014, the BRPD Narcotics Division submitted an affidavit for a search

1

warrant to Judge Moore of the 19th Judicial District Court ("19th JDC") of Louisiana. *Aff. Search Warrant* (Gov. Ex. 1A). The affidavit requested issuance of a search warrant for the defendant's residence—1737 La Annie Dr. #31, Baton Rouge, Louisiana—based on a confidential informant's assertion that marijuana was being sold out of the residence. *Id.* Because the confidential informant advised that there was a semi-automatic rifle in the residence, the affidavit requested a "no-knock" warrant and permission for a nighttime or holiday execution. *Id.* The bottom of the affidavit was signed by the affiant, Detective Sinclair, and Judge Moore. *Id.* Judge Moore issued the search warrant, expressly authorizing officers to execute the warrant "anytime day or night, including Sunday and Holidays." *Search Warrant* (Gov. Ex. 1B). The warrant, however, did not contain any language permitting a "no-knock" entry of the residence. *Id.*

As admitted by Det. Pittman, the search warrant itself did not contain permission for a "no-knock" entry. *Suppression Hr'g Tr.* 11–12, Doc. 27. However, Det. Pittman testified that Judge Moore authorized a "no-knock" entry by signing the affidavit for search warrant requesting such an entry. *Id.* at 12:1–4 (stating that the "no-knock" request was contained in the affidavit and "the Judge will not sign the affidavit if he does not authorize the *no knock*"). According to Det. Pittman, in his experience obtaining warrants from judges within the 19th JDC, the "no-knock" language never appears in the search warrant itself. *Id.* at 12:14–15; *see id.* at 22–23.

At 8:00 P.M. on September 3, 2014, BRPD officers executed the search warrant on the defendant's residence. Without knocking and announcing their presence, 16 officers executed the search warrant. *See id.* at 36–37. The officers announced "police," "search warrant" as they entered the residence and began the search. *Id.* at 27. Once inside, the officers handcuffed the defendant and brought him, a woman, and at least one small child into the living room; the defendant was "definitely in custody and not free to leave." *Id.* at 28, 61, 72.

During the course of the search, the defendant made two statements in response to police questioning. Initially, the defendant claimed that he did not have anything illegal in the house. *Id.* at 57. Det. Pittman testified that he witnessed Det. Sinclair read the defendant his *Miranda* rights prior to the defendant's initial statement.[1] *Id.* at 27:8–9, 63:9. Subsequently, the defendant admitted possession of the contraband discovered during the search. *Id.* at 57, 68:17–24. Det. Banks testified that he heard Det. Sinclair read the defendant his *Miranda* rights, and that he observed the defendant make the admission (i.e., the second statement). *Id.* at 71–72. The defendant did not sign a *Miranda* waiver form. *Id.* at 63.

According to Det. Banks, at the time of the defendant's second statement, there was no discussion concerning child services or what would happen to the children. *Id.* at 72:1–11. Det. Pittman and Det. McClure testified as to the standard protocol when children are present during the execution of a search warrant. *See id.* at 30–31, 63–65. In these circumstances, an officer will have a discussion with the suspect and anyone else present inquiring into any potential relatives who can take care of the children: "We generally will call a relative or ask if we can get a relative. If there's no relative available, or they won't give use any information about somebody that can take the children, then we have to call child services." *Id.* at 30–31. No affirmative evidence was presented that any such conversation occurred with the defendant in this case.[2]

On July 9, 2015, the defendant was indicted with knowingly possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and knowingly and intentionally possessing marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 844(a). The defendant

---

[1] Det. Sinclair did not testify at the suppression hearing.
[2] The defendant argues that his statements were coerced because the officers threatened to call child services. *Def.'s Post-Hr'g Supp. Mem.* 11–12, Doc. 29. However, because the Court finds the defendant did not waive his *Miranda* rights, the Court makes no ruling as to the voluntariness of the statement (i.e., psychological pressure).

now brings the instant motion requesting suppression of evidence discovered during the execution of the search warrant at his residence and statements given by the defendant during that search.

II.   DISCUSSION

   A.   Knock-and-Announce

Generally, officers must knock and announce their presence prior to executing a search warrant. *Wilson v. Arkansas*, 514 U.S. 927 (1995) (incorporating the common law rule into the Fourth Amendment's reasonableness analysis); 18 U.S.C. § 3109 (statutory knock-and-announce). In *Hudson v. Michigan*, the Supreme Court held that the federal exclusionary rules does not apply to violations of the knock-and-announce rule. 547 U.S. 586, 594 (2006); *see United States v. Bruno*, 487 F.3d 304 (5th Cir. 2007) (extending *Hudson* to violations of 18 U.S.C. § 3109).

Although the defendant concedes that violation of the knock-and-announce rule does not result in suppression of the evidence, he argues that this violation should be taken into consideration when evaluating the officers' credibility. *Def.'s Post-Hr'g Supp. Mem.* 8, Doc. 29. The Government responds by asserting that the officers did not violate the knock-and-announce rule despite the fact that the search warrant did not grant permission for a "no-knock" entry. *Gov't Post-Hr'g Opp'n* 3–4, Doc. 34. According to the Government, it is general practice in the 19th JDC to conduct "no-knock" entries based solely on the judge signing an affidavit requesting such, regardless of whether the search warrant speaks to the issue. *Id.* at 4. Therefore, at the very least, the officers acted with a "good faith" belief that they were authorized to conduct a "no-knock" entry. *Id.* at 5.

In *United States v. Dupras*, the common practice in the area was to assume authorization for a "no-knock" entry when such request was made in the affidavit, even though the authorization

4

was not contained within the search warrant itself. 980 F. Supp. 344, 348–49 (D. Mont. 1997). There, the court stated:

> The Fourth Amendment provides that "no Warrant[ ] shall issue" unless it "particularly describ[es] the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. *The particularity requirement of the Fourth Amendment cannot be based on a telepathic understanding between the neutral magistrate and law enforcement officers. The police only have the authority expressly granted in the warrant.* Similarly here, because the warrant did not authorize a no-knock entry, the police were not entitled to execute a no-knock search absent some exigent circumstance that took place at the scene.

*Id.* at 349 (alterations in original) (emphasis added).[3] This Court agrees—an intrusion into constitutionally protected privacy interests is authorized only to the extent permitted by the search warrant itself, not by reference to the accompanying affidavit. However, exigent circumstances may exist at the scene, which would justify a "no-knock" entry, regardless of the terms of the search warrant. *See Richards v. Wisconsin*, 520 U.S. 385, 394 (1997). In the instant case, the testimony presented at the suppression hearing did not demonstrate the presence of any at-the-scene exigent circumstances. Regardless, the Court makes no finding as to this issue because the remedy of the exclusionary rule is not applicable to violations of the knock-and-announce rule.

### B.    *Miranda* Waiver

The Fifth Amendment requires that no person "be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. Accordingly, "the prosecution may not use statements . . . stemming from custodial interrogation"[4] unless the accused has been informed[5] of

---

[3] The Court acknowledges that this case was decided prior to the Supreme Court's decision in *Hudson v. Michigan*, which held that the exclusionary rule is not a remedy for the violation of the knock-and-announce rule. 547 U.S. 586 (2006). However, the discussion regarding the contents of the search warrant remains pertinent.

[4] The Government does not dispute that the defendant was subject to custodial interrogation at the time he made the statements. *See Suppression Hr'g Tr.* 72, Doc. 27 (stating that the defendant was "in custody and not free to leave"); *id.* at 57 (testifying that the defendant's statements were the result of police questioning).

[5] The defendant argues that the Government failed to establish "what specific rights were explained" to the defendant; "perhaps [the officer] was reading [the defendant] his administrative rights to have his front door repaired[.]" *Def.'s Post-Hr'g Supp. Mem.* 10 & n.3, Doc. 29. The Court finds this argument without merit. Det. Pittman stated that he

and freely waived his Fifth Amendment privileges. *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). A *Miranda* waiver must be "voluntarily, knowingly, and intelligently" given. *Id.* at 444. The Government bears the burden of establishing that a defendant waived his *Miranda* rights by a preponderance of the evidence. *Berghuis v. Thompkins*, 560 U.S. 370, 383 (2010) (citing *Miranda*, 384 U.S. at 475); *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986). Although a *Miranda* waiver may be implied, "[i]f the State established that a *Miranda* warning was given and the accused made an uncoerced statement, this showing, standing alone, is insufficient to demonstrate 'a valid waiver' of *Miranda* rights." *Berghuis*, 560 U.S. at 384. "The prosecution must make the additional showing that the accused *understood* these rights." *Id.* (emphasis added). The remedy for a *Miranda* violation is exclusion of the statement.[6] *Oregon v. Elstad*, 470 U.S. 298 (1985).

Here, the Government has not met its burden of proving that the defendant validly waived his *Miranda* rights. Specifically, the evidence on record is devoid of any mention of whether the defendant actually understood the rights as read to him. In fact, no inquiry on the subject was made during the course of the suppression hearing. Instead, the Government relied on the fact that the defendant was read his *Miranda* rights and then subsequently made a statement. Without the further showing that the defendant *understood* those rights, the fact that he made a post-*Miranda* statement is insufficient to demonstrate a valid waiver of those rights. Because the Government failed to elicit testimony on whether the defendant understood his rights, its burden is not met, and the statements at issue—admitting possession of the contraband—must be suppressed.

---

"witnessed him on the initial *mirandization*." *Suppression Hr'g Tr.* 63:9, Doc. 27 (emphasis added). Additionally, Det. Banks testified that he heard Det. Sinclair read the defendant "his *Miranda* rights[.]" *Id.* at 71:19–25.

[6] In limited circumstances, inapplicable to this ruling, the physical "fruits" of a *Miranda* violation may be excluded as well. *Missouri v. Seibert*, 542 U.S. 600 (2004) (plurality opinion). The physical evidence in this case was discovered prior to the defendant's admission, and therefore was not a "fruit" of the defendant's statement.

## III.  CONCLUSION

For the reasons stated above, the defendant's Motion to Suppress (Doc. 20) is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to the statements made subject to custodial interrogation, and **DENIED** as to the physical evidence discovered during the search.

Signed in Baton Rouge, Louisiana, on February 10, 2016.

    _____
    **JUDGE JAMES J. BRADY**
    **UNITED STATES DISTRICT COURT**
    **MIDDLE DISTRICT OF LOUISIANA**